UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

HEZEKIAH SMITH,

    Petitioner,

vs.    Case No. 2:05-cv-507-FtM-29DNF

FLORIDA DEPARTMENT OF CORRECTIONS,
FLORIDA ATTORNEY GENERAL,

    Respondents.
_____

**OPINION AND ORDER**

**I. Status**

Petitioner Hezekiah Smith (hereinafter Petitioner or Smith), who is proceeding *pro se*, initiated this action by filing a Petition for Writ of Habeas Corpus (Doc. #1, Petition) pursuant to 28 U.S.C. § 2254 on October 17, 2005.[1] Petitioner challenges the Florida Parole Commission's calculation of his discharge date as 2027. See generally Petition. The Petition raises the following sole ground for relief:[2]

---

[1] The Petition (Doc. #1) was filed in this Court on October 18, 2005; however, the Petition is considered filed when delivered to prison authorities for mailing and, absent evidence to the contrary, is assumed to be the date the inmate signed the document. Washington v. United States, 243 F.3d 1299, 1301 (11th Cir. 2001).

[2] On February 13, 2008, the Court granted Petitioner's "Motion to Dismiss Ex Post Facto" Claim, ground two of the Petition, due to Petitioner's failure to exhaust this ground for relief in state court (Doc. #19).

**Whether the Florida Parole Commission violated the double jeopardy laws by computing Petitioner's discharge date as 2027**

Petition at 6. Essentially, Petitioner's challenges the Department of Corrections and the Florida Parole Commission's calculation of his sentence structure.

Respondent, the Secretary of the Florida Department of Corrections, filed a Response to Show Cause Order (Doc. #5) (hereinafter Department's Response) and submitted exhibits in support of the Response.[3] Additionally, the Florida Parole Commission filed a Response to Show Cause Order (Doc. #4) (hereinafter Commission's Response), incorporating a motion to intervene in this action, and submitted exhibits in support of their Response.[4] Petitioner was instructed on how to properly respond to a motion to dismiss and/or for summary judgment. See Court's Order dated November 28, 2005 (Doc. #3). Petitioner filed a Reply to the Department's Response (Doc. #6) (hereinafter Reply). Thereafter, Petitioner filed a Motion for Summary Judgment, construed by the Court as a Supplemental Reply to the Commission's Response (Doc. #10)(hereinafter Supp. Reply). See Court's Order dated November 7, 2007 (Doc. #14). This case is now ripe for review.

---

[3] The Department's exhibits will be hereinafter referred to as "DOC Exh."

[4] The Commission's exhibits will be hereinafter referred to as "Comm. Exh."

## II. Procedural History

Smith committed the offenses of Robbery on November 2, 1979, and on November 19, 1979 (case nos. 80-2671 and 80-43472), and was sentenced on October 15, 1980 to 2 years in state prison, followed by 2 years community control, less 328 days of days credit for time served, in each case, the sentences to run concurrently. Comm. Exh. A (Doc. #4-4) at 18. On October 1, 1981, Smith was released from the Department's custody and began serving the community control portion of his sentence. Id. at 19.

In April 29, 1983, Smith was re-sentenced to 2 years in state prison, less 102 days credit for time served, on case no. 80-2671, for a violation of the provisions of community control. Id. On the same day, Smith was sentenced to 15 years state prison, less 93 days credit, for a January 27, 1983 Robbery offense (case no. 83-1725), the sentence to run concurrent to case no. 80-2671. Id. On June 30, 1983, Smith was sentenced to 15 years state prison, less 154 days credit, for a January 27, 1983 Robbery offense (case no. 83-1885), the sentence to run consecutive to case no. 83-1725. Id. On August 15, 1983, Smith was sentenced to 15 years state prison, less 180 days credit, for a January 26, 1983 Robbery offense (case no. 83-1704), the sentence to run consecutive to case no. 83-1885. Id. Smith was returned to the Department's custody on August 17, 1983.

On August 16, 1994, Smith was granted and accepted parole by order of the Florida Parole Commission, subject to the terms and

conditions of his supervision until September 15, 2027, his maximum sentence expiration date. Id. (Doc. #4-8), Exh. J. On November 20, 2003, the Commission issued a Warrant for Retaking Paroled Prisoner. Id., Exh. K. On January 5, 2004, the Commission issued an Amended Warrant for Retaking Paroled Prisoner. Id., Exh. L. Smith was found guilty of the charged parole violations, and the Commission revoked his parole effective April 17, 2004. Id., Exh. M. Smith was returned to the Department's custody on May 3, 2004.

Due to Smith's parole revocation, the Department forfeited the basic and incentive gain-time Petitioner earned as to case no. 83-1704, pursuant to § 944.28(1), Fla. Stat.[5] Department's Response (Doc. #5-5), Exh. C.[6] The Department did not forfeit Smith's gain-time earned as to case nos. 80-2671, 83-1725 and 83-1885, deeming these sentences expired pursuant to Orosz v. Singletary, 693 So. 2d 538 (Fla. 1997).[7] Id. On May 4, 2005, the Commission established

---

[5] If . . . parole, or control release as described in § 947.146 granted to the prisoner is revoked, the department may, without notice or hearing, declare a forfeiture of all gain-time earned according to the provisions of law by such prisoner prior to such escape or his or her release under such clemency, conditional release, probation, community control, provisional release, control release, or parole. § 944.28(1), Fla. Stat.

[6] Exhibit C includes an affidavit prepared by the Bureau of Sentence Structure and Population Management that details with particularity how Petitioner's sentence was calculated. Petitioner does not contest the record evidence submitted by and relied upon by the Department in calculating his sentence.

[7] In Orosz, the Florida Supreme Court held that an inmate who is serving consecutive sentences must have his sentences treated as one term for the purpose of awarding and forfeiting gain-time. Id.
(continued...)

Petitioner's Presumptive Parole release Date as May 15, 2015. Commission's Response, Exh. N.

On November 4, 2004, Smith filed a petition for writ of habeas corpus in the circuit court (case no. 04-982CA). Id., Exh. O. Petitioner raised the same issue *sub judice* in his state petition. Id. The circuit court directed the Commission to file a response and permitted intervention by the Florida Department of Correction, who also filed a response. Id., Exhs. P, Q, and Department's Response (Doc. #5-4), Exh. B. On June 3, 2005, the circuit court denied the petition. Commission's Response, Exhibit T. Contrary to the Department's determination, the circuit court found that Petitioner was not entitled to the relief provided by Orosz v. Singletary. Id. at 2, ¶4. Further, the circuit court pointed out that Petitioner's equation of his tentative release date to his maximum sentence expiration date was incorrect. Id. at 3, ¶6. Smith appealed the circuit court's denial of his petition by filing a petition for writ of certiorari with the appellate court, which was denied on September 20, 2005. Id., Exh. U.

---

⁷(...continued)
at 540. The Orosz holding extends "only those inmates who: (1) committed an offense during the interval between July 1, 1978, and June 15, 1983; (2) were in service of a sentence at the time of the offense; (3) were given a sentence to run consecutively to the sentence for the previous offense; and (4) had completed the sentence for the previous offense before June 17, 1993." Id. at fn. 1.

## III. Applicable § 2254 Law

Smith filed his timely[8] Petition after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (1996). Consequently, post-AEDPA law governs this action. Abdul-Kabir v. Quarterman, 127 S. Ct. 1654, 1664 (2007); Penry v. Johnson, 532 U.S. 782, 792 (2001); Davis v. Jones, 506 F.3d 1325, 1331, n. 9 (11th Cir. 2007). Under AEDPA, the standard of review "is 'greatly circumscribed and highly deferential to the state courts.' Crawford v. Head, 311 F.3d 1288, 1295 (11th Cir. 2002)." Stewart v. Sec'y Dep't of Corr., 476 F.3d 1193, 1208 (11th Cir. 2007). See also Parker v. Sec'y Dep't of Corr., 331 F.3d 764 (11th Cir. 2003). AEDPA altered the federal court's role in reviewing state prisoner applications in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002).

Further, a federal court only may entertain an application for a writ of habeas corpus from a state prisoner who claims his custody violates the "Constitution or the laws or treaties of the United States." 28 U.S.C. § 2254(a). "The writ of habeas corpus was not enacted to enforce State-created rights." Cabberiza v. Moore, 217 F.3d 1329, 1333 (11th Cir. 2000)(citation and quotation

---

[8]The AEDPA imposes a one-year statute of limitations on § 2254 actions. 28 U.S.C. § 2244(d). The Secretary and Commission concede that the Petition is timely. Department's Response at 6; Commission's Response at 4. The Court agrees.

marks omitted); Estelle v. McGuire, 502 U.S. 62, 68 (1991); Carrizales v. Wainwright, 699 F.2d 1053, 1055 (11th Cir. 1983). In particular, "[a] state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved." McCullough v. Singletary, 967 F.2d 530, 535 (11th Cir. 1992). "Federal courts entertaining petitions for writs of habeas corpus must follow the state court's interpretation of a state law absent a constitutional violation." Hunt v. Tucker, 93 F.3d 735, 737 (11th Cir. 1996). Similarly, a claim that petitioner's federal rights have been violated because state officials failed to correctly apply state law is merely a state law claim "couched in terms" of a federal claim, and fails to state a claim upon which relief may be granted by habeas corpus. Branan v. Booth, 861 F.2d 1507, 1508 (11th Cir. 1989).

**IV. Findings of Fact and Conclusions of Law**

Petitioner argues that the Florida Parole Commission violated Florida Statute 944.275(3)(A) when it failed to discharge him from parole on June 3, 1997, Petitioner's tentative release date. Petition (Doc. #1-2) at 4. Specifically, Petitioner claims that, when he was paroled on August 16, 1994, his parole discharge date was improperly "contracted out" to 2027, which violated Orosz v. Singletary, and increased his previously imposed sentence, and

violated the double jeopardy laws.[9]  Id.  Consequently, Petitioner argues that he was not on parole when he committed the act that violated the terms of his parole and resulted in his parole revocation.  Id.

Respondent submits that: 1) Petitioner confuses his maximum court-imposed release date, September 15, 2027, with his tentative release date, June 3, 1997; 2) Petitioner was given the benefit of the Orosz decision; and, 3) Petitioner had not reached his tentative release date when he was placed on parole on August 16, 1994, because he had not finished serving his last sentence. Department's Response (Doc. #5) at 10.  In particular, Respondent points out that gain time is not subtracted in calculating Petitioner's maximum sentence release date.[10]  Giving Petitioner the benefit of the Orosz decision, which was decided after Petitioner was placed on parole, Petitioner's tentative release date was recalculated to June 3, 1997.  Additionally, when Petitioner's parole was revoked, the gain-time he earned under his first two

---

[9] One of the protections afforded by the Double Jeopardy Clause is protection against multiple punishments for the same offense. United States v. DiFrancesco, 449 U.S. 117, 129 (1980).

[10] "The department shall establish for each prisoner sentenced to a term of years 'a maximum sentence expiration date,' which shall be the date when the sentence or combined sentences imposed on a prisoner will expire. In establishing this date, the department shall reduce the total time to be served by any time lawfully credited." § 944.275(3)(a), Fla. Stat.; Parole Com'n v. Cooper, 701 So.2d 543 (Fla. 1997).  A tentative release date is the date a prisoner is released when gain time or provisional credits are subtracted from the maximum release date. Id.

sentences in case nos. 80-2671, 83-1725 and 83-1885 was not forfeited. Instead, only the basic gain-time and incentive gain-time earned under case no. 83-1704 was forfeited. Nonetheless, Respondents insist that the circumstances attendant to the calculation of Smith's award of gain-time, his sentence calculation, the length of his parole supervision, and any forfeiture of gain-time is not a matter for federal habeas relief. Id. at 11; Commission's Response (Doc. #4) at 6-7. The Court agrees.

Here, the Florida Circuit Court and District Court of Appeals reviewed Smith's claims, and although disagreeing that Petitioner was entitled to the relief provided in Orosz, found no violation of state law in the calculation and structure of Petitioner's sentences, nor in the award and forfeiture of his gain-time credits. The state courts' decisions were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence. The Court having reviewed this matter finds no constitutional violation and no basis for habeas relief. Branan v. Booth, 861 F.2d 1508.

ACCORDINGLY, it is hereby

**ORDERED:**

1. The Florida Parole Commission's Motion to Intervene contained within their Response (Doc. #4) is **GRANTED, and the Florida Parole Commission is added as a respondent in this matter**.

2. Petitioner's Petition for Writ of Habeas Corpus (Doc. #1) is **DENIED**.

3. The **Clerk of Court** shall terminate any pending motions, enter judgment accordingly, and close this case.

**DONE AND ORDERED** in Fort Myers, Florida, on this __12th__ day of January, 2009.

_____
JOHN E. STEELE
United States District Judge

SA: hmk
Copies: All Parties of Record